**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

United States of America,

Plaintiff,

v.

Kevin Jon Cummings - 001
Elaine Marie Cummings - 002,

Defendants.

No. CR-17-00518-001-TUC-RM (JR)

**ORDER**

On December 12, 2019, Magistrate Judge Jacqueline M. Rateau issued a Report and Recommendation (Doc. 136) recommending that this Court deny Defendants Kevin Cummings and Elaine Cummings' Joint Motion to Suppress (Doc. 102). Judge Rateau heard oral argument on the Motion on December 3, 2019. (Doc. 130.) Defendants jointly objected to the R&R's recommendation (Doc. 161) and the government responded (Doc. 165). For the following reasons, the Court will adopt Judge Rateau's Report and Recommendation, ("R&R"), overrule Defendants' objections, and deny the Motion to Suppress.

**I. Background**

Defendants Kevin Cummings ("Mr. Cummings") and Elaine Cummings were charged in a three-count indictment on March 30, 2017 with (1) Conspiracy to Commit Social Security Fraud and Receive Stolen Public Monies in violation of 18 U.S.C. § 371;

(2) Social Security Fraud in violation of 42 U.S.C. § 408(a)(4); and (3) Receiving Stolen Public Money, Property, or Records, in violation of 18 U.S.C. § 641. (Doc. 3.) The conspiracy allegedly occurred over a 10-year period, from 2004 to 2014. (*Id.*)

Mr. Cummings was in a serious car accident on August 10, 2002 in which he suffered severe and debilitating injuries. (Doc. 111 at 2.) The charges in the case arise out of Mr. Cummings' subsequent award of disability benefits from the Social Security Administration ("SSA") which he began receiving in 2002. (*Id.*) In 2004 and 2010, Mr. and Mrs. Cummings started two businesses together, Baker Brothers Plumbing and Sticky's Smoke Shop. (*Id.*, Doc. 121.) In 2005, Mr. Cummings became the president of his family's plumbing business, Cummings Plumbing. (*Id.*, Doc. 121 at 2.) The government alleges that Mr. Cummings ran or helped run the start-up companies and the family plumbing business during the time he was receiving Social Security disability benefits and that he concealed his ability to work, his work activities, and his income from SSA. (Doc. 121 at 2, Doc. 134 at 2-3, Doc. 102 at 2.) Mr. Cummings denies the charges.

On April 10, 2017, Magistrate Judge D. Thomas Ferraro signed a search warrant (the "Microsoft Warrant" or "warrant") authorizing law enforcement officers to search six email accounts assigned to the Defendants and their employees and to seize the contents of those accounts before April 24, 2017. (Doc. 136 at 2-3, Doc. 102-1 at 2.) The accounts were operated by Microsoft Corporation. (*Id.*) The Microsoft Warrant sought all "electronic correspondence" and "transactional information" from the six accounts for a twelve-year period dating from December 1, 2004 through December 31, 2016. (Doc. 102-1 at 5.) Specifically, the warrant authorized the seizure of:

> (1) The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;
>
> (2) All records or other information regarding the identification of the account, to include full name,

physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

(3) The types of service utilized;

(4) All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

(5) All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

(*Id*. at 6.) The Microsoft Warrant further authorized the Government to seize:

(1) Communications, correspondence, writings, photographs, and videos concerning Kevin Cummings' working and/or improvement in medical condition during the time period of December 2005 and January 2014 and Elaine Cummings' knowledge of the work and/or improvement in medical condition; and

(2) Records related to who created, used, or communicated with the account or identifier, including records about their identities.

(*Id*. at 7.) The government employed a taint team to review the disclosed materials. The affidavit to the search warrant laid out the process by which the taint team was to review the seized materials. (*Id*. at 21-4.) The taint team was directed to:

> [C]onduct the search, identify privileged materials, separate the evidence, prevent potentially privileged information from reaching the investigative team, ensure that the investigative team receives only non-privileged or unprotected information, attempt to resolve questions of potential privileged documents or records through negotiation and litigation, and create a record to establish what steps were taken.

(*Id*. at 21.) The taint team was to review the materials disclosed by Microsoft Corporation to the Government and determine which of those materials the warrant authorized the Government to seize. (*Id*. at 22.) Any materials "not within the scope" of

the warrant's authorization were not to be provided to the prosecution. (*Id.*) The taint team was directed to remove irrelevant materials—those that did not pertain to "communications…concerning Kevin Cummings' working and/or medical condition…[between] December 2005 and January 2014 and Elaine Cummings' knowledge [of his condition]" or "records related to" people who communicated with the account holders—and withhold them from the prosecution. (*Id.*)

The taint team was further directed to divide all relevant materials identified as potentially privileged into four categories: (1) privileged information, which includes attorney-client information, attorney work product information, and client confidences ("Category A"); (2) potentially privileged information ("Category B"); (3) privileged or potentially privileged information that may fall into the crime-fraud exception of the attorney-client privilege ("Category C"); and (4) non-privileged information ("Category D"). (*Id.* at 23.) Then, the taint team was directed to return materials in category A to the defense, forward materials in Category D to the prosecution, and "submit to the Court, under seal… items from Categories B and C, and seek the Court's final determination concerning whether the submitted materials are protected by attorney-client privilege." (*Id.*) Then the taint team was to send to the prosecution materials from Categories B and C that the Court had determined were not protected by attorney-client privilege. (*Id.*) The affidavit directs the taint team to "err on the side of caution" and "treat any questionable items as potentially privileged." (*Id.* at 24.) Even with privileged information removed, the parties agree that the search returned over 50,000 emails. (Doc. 153 at 55.)

The case has been designated complex and has been referred to Magistrate Judge Rateau for all discovery issues and pretrial deadlines. (Doc. 78.) Trial is currently set for September 15, 2020. (Doc. 137.)

## II. Standard of Review

A district judge must "make a de novo determination of those portions" of a magistrate judge's "report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The advisory committee's notes to Rule

72(b) of the Federal Rules of Civil Procedure state that, "[w]hen no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" of a magistrate judge. Fed. R. Civ. P. 72(b) advisory committee's note to 1983 addition. *See also Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) ("If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error."); *Prior v. Ryan*, CV 10-225-TUC-RCC, 2012 WL 1344286, at *1 (D. Ariz. Apr. 18, 2012) (reviewing for clear error unobjected-to portions of Report and Recommendation).

## III. Discussion

### a. The Joint Motion to Suppress

Defendants jointly move to suppress the results of the Microsoft Warrant on three grounds: (1) the warrant was overbroad and lacked sufficient particularity because it authorized the seizure of electronic information that was irrelevant to the charges against Defendants; (2) the warrant was overbroad because the Government did not cull information subject to the doctor-patient privilege or the marital privileges; (3) the warrant was overbroad because it covered a twelve-year period, rather than the nine-year time frame alleged in the indictment. (Doc. 102 at 4-6.) Defendants rely on the concurrence in *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162 (9th Cir. 2010) to argue that the Government should have created "a search protocol… designed to uncover only the information for which it has probable cause" and should have used an independent third party or specialized personnel to segregate and/or redact data not pertinent to the warrant. (*Id.* at 10.) Defendants contend that the Government seized approximately 59,000 emails pursuant to the warrant. (*Id.*)

The Government opposes the suppression of evidence seized pursuant to the search warrant. (Doc. 122.) In response, the Government argues that the warrant was not overbroad because it established probable cause to search the six email accounts for information pertaining to "Kevin Cummings' working and/or improvement in health" and Elaine Cummings' knowledge of such. (*Id.* at 3.) The government argues that the warrant

described with sufficient particularity the place to be searched (the six email accounts) and the items to be seized (communications and records related to the Defendants' work- and health-related activities and knowledge). (*Id.* at 4.)

The Government further contends that it had probable cause to extend the search through December 2016 because that was within the time period in which the Government was investigating the case. (*Id.* at 4-5.) The Government contends that evidence of Kevin Cummings' work activities extended through December 2016, and therefore evidence supporting the charges, and potentially contradicting other evidence in the case, could be found in this time period. (*Id.*) Additionally, the Government argues that *Comprehensive Drug Testing*, 621 F.3d 1162, did not create any mandatory search protocol requirements. (*Id.* at 6.)

The Government also claims that it was not required to separate marital privilege emails but the taint team in fact did so. (*Id.* at 7.) It claims that there were no emails or communications that implicated the doctor-patient privilege. (*Id.*) Finally, the Government argues that, even if the Court did find the search warrant overbroad, the good-faith exception to the exclusionary rule would apply and the search would be valid because reliance on the warrant was objectively reasonable. (*Id.*)

**b. Report & Recommendation**

The R&R recommends that this Court deny the Motion to Suppress. (Doc. 136.) The R&R finds that the Microsoft Warrant satisfied the Fourth Amendment's particularity requirement. (*Id.* at 5.) It finds that *Comprehensive Drug Testing*, 621 F.3d 1162, did not create the search protocol requirements claimed by Defendants. (*Id.* at 6.) It further finds that the taint team procedures, including "identify[ing] evidence of Mr. Cummings' work activity and health improvement" and segregating privileged emails, minimized the risk of the prosecution receiving irrelevant or unrelated information. (*Id.* at 7.) The Magistrate Judge was unpersuaded by Defendants' argument that the Government should have applied "specific search terms" in order to better protect them from an overly broad search and seizure. (*Id.*) The R&R finds that the use of the taint team as described

in the affidavit sufficiently addressed the "practical limitations associated with the search of the email accounts" and thus the particularity requirement was satisfied. (*Id*. at 8.)

The R&R further finds that the Microsoft Warrant was not overbroad. (*Id*.) Specifically, the R&R addresses Defendants' argument that the warrant was overbroad as to time and finds that it was not. (*Id*. at 10.) The R&R finds that the Government justified its extension of the time frame to December 2016, despite that Mr. Cummings ceased receiving benefits in January 2014, based on its need for evidence from that entire time period. (*Id*.) "It could reasonably be expected that issues related to [Mr. Cummings'] work abilities and recovery would continue to be discussed… for some time after he ceased receiving [disability benefits]" and this justified the longer time period. (*Id*. at 10.)

The R&R goes on to discuss the good faith exception to the exclusionary rule. (*Id*.) It finds that even if the warrant were technically deficient, "the probable cause statement supporting the warrant establishes… probable cause" and the executing agents relied on the warrant "in an objectively reasonable manner." (*Id*. at 11.) Therefore, it finds that the good faith exception would apply even if the Microsoft Warrant lacked specificity. (*Id*.)

After the R&R was issued, the Government filed a "Notice of Correction of Factual Assertion." (Doc. 138.) The Government states that, contrary to the R&R's factual finding that the taint team had "identif[ied] evidence of Mr. Cummings' work activity and health improvement," this was "not one of the taint team's responsibilities." (*Id*.) It states that "the search warrant protocol did not direct the taint team to 'seize' information and segregate relevant items." (*Id*.) The Government clarifies that "the taint team reviewed the search warrant material and segregated the potentially privileged information from the prosecution team." (*Id*.) In other words, the Government asserts that the taint team did not actually withhold from the prosecution emails and other communications that were irrelevant to the charges, as was described in the taint team protocols. (*See* Doc. 102-1 at 22.) In essence, the prosecution had access to all of the non-privileged emails seized from the six accounts, including the irrelevant ones, and

Defendants object on that basis.

**c. Defendants' Objections**

Defendants object to the R&R's recommendation on three grounds: (1) the warrant did not meet the particularity requirement of the Fourth Amendment; (2) the warrant was overbroad as to time; and (3) the good faith exception does not apply. (Doc. 161.) Defendants contend that the search warrant "authorized the seizure of over 59,000 emails without any effort to limit the seizure to only those emails pertinent [] to the investigation [of] this case." (*Id*. at 3.) Defendants contend that the only restriction on the materials seized was the privilege segregation performed by the taint team. (*Id*.) Therefore, Defendants aver that the search was a "prohibited general search" that does not comply with the Fourth Amendment's particularity requirement. (*Id*. at 4.)

Defendants object that the Magistrate Judge's finding of particularity was "based on a misunderstanding (since clarified) of how the taint team was used." (*Id*.) They contend that the Government's clarification materially affected the Magistrate Judge's analysis of the search warrant's particularity. (*Id*.) They argue that the Government's "over-seizure of data absolutely exposed sensitive information about other individuals" who were not involved the alleged crimes, as well as unrelated information about the Defendants. (*Id*. at 5.) Therefore, Defendants aver, the warrant did not satisfy the Fourth Amendment's particularity requirement. (*Id*.)

Second, Defendants ask the Court to reject the Magistrate Judge's conclusion that the warrant was not overbroad as to time. (*Id*.) Defendants argue that the Government's argument as to why the warrant included emails through December 2016 was unreasonable because "[b]y this logic, the warrant would not be overbroad even if executed five, ten, or fifteen years after Mr. Cummings stopped receiving benefits." (*Id*. at 6.) Defendants argue that the Government did not need emails from 2015 and later in order to rebut contradictory testimony or evidence. (*Id*.) They contend that there was no probable cause for the seizure of emails two years after the time frame of the charged crimes and therefore the warrant was overbroad. (*Id*.)

Third, Defendants object to the Magistrate Judge's findings on the good faith exception. (*Id*.) Defendants contend that the Magistrate Judge's analysis was based on a misunderstanding of the procedures employed by the taint team. (*Id*. at 7.) They further argue that the warrant "was so clearly overbroad that it could not have been reasonably relied upon in good faith." (*Id.*)

In response, the Government reasserts its prior argument that the warrant was adequately specific relative to the probable cause for the search. (Doc. 165 at 1.) The Government argues that it was reasonable to search and seize emails for a period of two years beyond the events alleged in the indictment. (*Id*. at 2.) In addressing Defendants' assertions that the Magistrate Judge based her decisions on a misunderstanding of the procedures followed by the taint team, the Government responds that it was "not required to implement a taint team" and was "not required to have the taint team act on behalf of the prosecution team in reviewing the seized materials for relevant information[.]" (*Id*. at 3.) The Government further argues that the volume of materials seized was not unreasonable given the length and breadth of the alleged conspiracy. (*Id*.)

**d. Applicable Law and Analysis**

**1. Particularity**

"[N]o warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized[.]" U.S. Const. amend. IV. "The Fourth Amendment requires that a warrant particularly describe both the place to be searched and the person or things to be seized." *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986). "Particularity is the requirement that the warrant must clearly state what is sought." *United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006) (quoting *United States v. Towne*, 997 F.2d 537, 544 (9th Cir. 1993)). "The description must be specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized." *Spilotro*, 800 F.2d at 963; *see also United States v. Fries*, 781 F.3d 1137, 1151 (9th Cir. 2015).

The purpose of the particularity requirement is to prevent "general, exploratory

searches." *Id*. The degree of specificity required varies "depending on the circumstances of the case and the type of items involved." *Id*. In determining whether a description of the items to be seized is sufficiently precise, courts have considered the following factors: "(1) whether probable cause exists to seize all of the items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued." *Id*. at 963-64 (internal citations omitted); *see also United States v. Adjani*, 452 F.3d 1140, 1148 (2006) (warrant to search computers was sufficiently specific).

Searches of voluminous electronic information necessitate different considerations than more historically traditional types of searches. *See United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1177 (9th Cir. 2010); *United States v. Cotterman*, 709 F.3d 952, 957 (9th Cir. 2013). Governmental over-seizing of electronic information "is an inherent part of the electronic search process." *Comprehensive Drug Testing*, 621 F.3d at 1177. Thus, courts must "strik[e] the right balance between the governments' interest in law enforcement and the right of individuals to be free from unreasonable searches and seizures." *Id*.[1] The Ninth Circuit has approved a "seize first, search second" methodology where the Government can "demonstrate… factually why such a broad search and seizure authority is reasonable in the case at hand." *Hill*, 459 F.3d at 975.

Defendants object that because the taint team did not follow the search protocol as set forth in the affidavit by separating irrelevant emails from relevant ones, that the warrant fails as to particularity. It is true that although the affidavit stated that the taint

[1] *Comprehensive Drug Testing* involved a seizure of data related to the results of drug tests of professional baseball players. 621 F.3d 1162. The Court in that case was primarily concerned with the seizure of data of individuals who were not subject to the search warrant. *Id.* at 1169-70. The Government attempted to justify seizure of the unauthorized data pursuant to the "plain view" doctrine, an argument the Court rejected. *Id*. at 1170-71. The instant case differs significantly from *Comprehensive Drug Testing* because there is no evidence before the Court that the rights of any third parties were infringed by the search. The court found in that case that government agents essentially used the over-seizure to "bring constitutionally protected data into [] plain view." *Id*. No such concerns exist here.

team would separate out irrelevant information and withhold it from the prosecution, this was not done. *See supra* at 3-4, 7. However, Defendants have cited no authority that requires the Government to employ a taint team to cull irrelevant emails from relevant ones before the prosecution is permitted to view the seized materials. The Government did not follow the search protocol outlined in the affidavit; however, this does not render the warrant facially invalid because specific search protocols do not affect the validity of a warrant. *See Groh v. Ramirez*, 540 U.S. 551, 557 (2004) (explaining that warrants must be based on probable cause, supported by a sworn affidavit, and particularly describe the place to be searched and things to be seized). Defendants contend that the Government should have created a search protocol pursuant to *Comprehensive Drug Testing*. However, as the Magistrate Judge found, the Ninth Circuit Court of Appeals has explicitly addressed the search protocol portion of that case and stated that:

> The search protocol was no longer part of the majority opinion, but instead was moved to a concurring opinion and thus was no longer binding circuit precedent. By its own terms, the concurring opinion proposes the protocols not as constitutional requirements but as 'guidance,' which, when followed, 'offers the government a safe harbor.'

*United States v. Schesso*, 730 F.3d 1040, 1049 (9th Cir. 2013) (Kozinski, C.J., concurring). Therefore, although the Government does not have access to the "safe harbor" that following the protocols would have provided, its failure to do so does not necessarily render the search and seizure overbroad under the Fourth Amendment.

The warrant in this case authorized the search and seizure of essentially all information and communications in the six identified email accounts, for the period from December 1, 2004 through December 31, 2016. *See supra* at 2–3. The warrant described in additional detail the information to be seized as "fruits, evidence, and instrumentalities" of the alleged crimes, including communications related to Mr. Cummings' work and health condition between December 2005 and January 2014 and Mrs. Cummings' knowledge of those conditions. *Id.* Based on the briefing before it and for purposes of this analysis, the Court finds that the Government in fact seized all of the

emails from the six accounts for the specified time period, not just those that were "fruits, evidence, and instrumentalities" of the alleged crimes.

The search authorized by the warrant here resembles the broad and inclusive, but not limitless, searches permitted in "permeated-with-fraud" cases. *United States v. Offices Known as 50 State Distrib. Co.*, 708 F.2d 1371, 1374 (9th Cir. 1983) (warrant not overbroad where "fraud permeated the entire business operation"); *United States v. Brien*, 617 F.2d 299, 309 (1st Cir.), *cert. denied*, 446 U.S. 919 (1980) ("[W]here there is probable cause to find that there exists a pervasive scheme to defraud, all the business records of an enterprise may be seized, if they are, as here, accurately described so that the executing officers have no need to exercise their own judgment as to what should be seized."); *Nat'l City Trading Corp. v. United States*, 635 F.2d 1020, 1026 (2d Cir. 1980) (because "there was probable cause to believe that [the] business was permeated with fraud… the agents could properly seize all of the business records [] described in the warrant"); *see also Adjani*, 452 F.3d at 1149-50 (avoiding limitation and restriction in search of electronic data was reasonable under the circumstances). In those cases, courts upheld broad seizures of business records and materials where the probable cause affidavit indicated that the entire business was engaged in fraudulent operations and where the seizing officers had no discretion about what to seize. On the other hand, cases where warrants were struck down as impermissible general warrants involved "widespread seizure of business records while the suspected wrongdoing supporting the warrant pertained only to small segments of the operations of the searched business." In those cases, "the evidence of fraud was segregable." *Offices Known as 50 State Distrib. Co.*, 708 F.2d at 1375 (citing *United State v. Abrams*, 615 F.2d 541 (1st Cir. 1980); *United States v. Roche*, 614 F.2d 6 (1st Cir. 1980); *Application of Lafayette Academy, Inc.*, 610 F.2d 1 (1st Cir. 1979)).

In *50 State*, where the validity of a broad warrant seeking evidence of fraudulent activity was upheld, the court distinguished that case from *United States v. Cardwell*, 680 F.2d 75, 76 (9th Cir. 1982), in which the court struck down as overbroad a warrant that

authorized the seizure of "corporate books and records… which are the fruits and instrumentalities, of violations of [the tax evasion statute]." In *Cardwell*, the only limitation on the search was that the seized items be evidence of the tax evasion statute. 680 F.2d at 76. The government seized 16 boxes of the corporation's records containing over 100,000 documents and dating back fourteen years. *Id*. at 76. The government had already focused its investigation on certain parts of the defendant's business records but the results of the investigation "were not used to refine the scope of the warrant." *Id*. at 78. Where "the government knew exactly what it needed and wanted and where the records were located… there was no necessity for a massive re-examination of all records bearing on income and expenses." *Id*. at 78 (citing *VonderAhe v. Howland*, 508 F.2d 364, 370 (9th Cir. 1974)).

The allegations in this case are that Defendants defrauded SSA for about a decade, and that the fraud conspiracy involved ongoing, knowing misrepresentations of Defendants' living and working conditions. Uncovering evidence of these activities necessarily involves a broad inquiry into Defendants' personal and professional lives. However, the Microsoft Warrant did not authorize a search of the entirety of the business records of Defendants' three family businesses. Nor did it authorize a search of their home, or of any other personal or business email accounts they may have used. Rather, the warrant was limited, based on the Government's investigation, as to time frame and the places to be searched.

The court finds the search and seizure authorized by the warrant here distinguishable from "general, exploratory searches" as prohibited by the Fourth Amendment. *See United States v. Kow*, 58 F.3d 423 (1995) (warrant overbroad where it authorized seizure of all of company's business and financial records and computer hardware and software and did not specify how the items were related to criminal conduct); *Ctr. Art Galleries-Hawaii, Inc. v. United States*, 875 F.2d 747, 750 (9th Cir. 1989) (warrant overbroad where it authorized "almost unrestricted seizure" of items without describing the crimes alleged and without limiting the scope of the seizure to

those transactions known to be related to the alleged crime). Unlike the warrants in those cases, the warrant here authorizes the Government to search only the contents of the six identified email accounts, for the specified time period. Furthermore, the affidavit clearly states how and why those materials are connected to the alleged crimes based on the Government's investigation.

Finally, concerns such as those present in *Comprehensive Drug Testing* are not present here. There is no evidence that the Government attempted a "run-around" of the Fourth Amendment by seizing materials beyond what was identified in the warrant. Courts must consider the totality of the circumstances in determining a warrant's validity. *United States v. Cardwell*, 680 F.2d 75, 78 (9th Cir. 1982). In considering the totality of the circumstances present in this case, the Court finds that the warrant was not overbroad and that the description of the items to be seized complies with the Fourth Amendment's particularity requirement. However, to the extent that the Government seeks to introduce any seized evidence at trial that is beyond the scope of the probable cause established by the warrant affidavit, that evidence would be subject to suppression. *See Andresen v. Maryland*, 427 U.S. 463, 482 n. 11 (1976); *Cardwell*, 680 F.2d at 78.

**2. Breadth**

"Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." *Hill*, 459 F.3d at 973. "As always under the Fourth Amendment, the standard is reasonableness." *Id.* at 974. "Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Needham*, 718 F.3d 1190, 1194 (2013) (citing *United States v. Grubbs*, 547 U.S. 90, 95 (2006)). "A warrant is overbroad if it expands the scope of a search beyond the places implicated by the probable-cause showing." *In re Search of Google Email Accounts*, 92 F.Supp.3d 944, 952 (D. Ak. 2015) (citing *Hill*, 459 F.3d at 973)). "[O]verbreadth is a tailoring question: does the proposed warrant limit the government's search to the specific places that must be inspected to confirm or dispel the suspicion that gave rise to probable cause?" *Id.* at 950 (citing

*Maryland v. Garrison*, 480 U.S. 79, 84 (1987)).

Defendants object that the warrant was overbroad as to time because it includes contents of the email accounts through December 2016, whereas the time frame of the alleged criminal activities ended in January 2014. The Government maintains that it should be allowed to search emails after January 2014 because those communications could provide it with evidence relevant to the charged crimes that could potentially contradict testimony from witnesses it interviewed in 2016. The Magistrate Judge agreed with the Government, finding that "it could reasonably be expected that issues related to [Mr. Cummings'] work abilities and recovery would continue to be discussed… for some time after he ceased receiving [] benefits." (Doc. 136 at 10.)

A seizure that is not limited to a time frame within which the suspected criminal activity took place may be found to be overbroad. *United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995). Likewise, non-date-restricted searches of email accounts may be found to be overbroad because "it is unreasonable to compel a provider to disclose every email in its client's account when the provider is able to disclose only those emails the government has probable cause to search." *Matter of Search of Info. Associated with Four Redacted Gmail Account*s, 371 F. Supp. 3d 843, 845 (D. Or. 2018); *see also In re [REDACTED]@gmail.com*, 62 F. Supp. 3d 1100, 1104 (N.D. Cal. 2014) (warrant application denied as overbroad where it contained "no date restriction of any kind" and the government made no "commitment to return or destroy evidence that is not relevant to the investigation"); *In re Search of Google Email Accounts identified in Attachment A*, 92 F.Supp.3d 944, 946 (D. Alaska 2015) (warrant application denied as overbroad where it contained no time period limitation and "nothing in the proposed warrant preclude[d] its agents from perusing other email content regardless how remote or unrelated that content may be to the current investigation").

It is true that the warrant in this case provides no initial restriction on relevancy as to the content of the emails and thus permits the Government to view potentially irrelevant emails in the course of the search. Despite this fact, the Court is satisfied that

the warrant falls within the Fourth Amendment's "reasonableness" requirement because: (1) it would be impossible for the Government to know the contents of the emails before reviewing them, and "seize first, search second" warrants for electronic information have been found constitutional for this reason, *see Hill*, 459 F.3d at 975; *see also Adjani*, 452 F.3d at 1149-50; *Andresen*, 427 U.S. 463, 482 n. 11 ("In searches for papers, it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized."); (2) this case resembles the "permeated with fraud" cases where courts have upheld broad, though not limitless, searches, see *Offices Known as 50 State Distrib. Co.*, 708 F.2d at 1374; (3) the warrant was restricted to specific email accounts for a specific time frame, *see Kow*, 58 F.3d at 427; and (4) there is no evidence of bad faith or wrongdoing by the Government with respect to the parameters and fruits of the search, *see Comprehensive Drug Testing*, 621 F.3d at 1171.

Moreover, suppression of all evidence seized pursuant to an overbroad warrant is not necessarily mandated. *United States v. Flores*, 802 F.3d 1028, 1045-46 (2015). Evidence that may be suppressed for overbreadth is limited to that evidence which is introduced at trial. *Id*. In *Flores*, the Government seized 11,000 pages of data from the defendant's Facebook account. *Id*. at 1046. 100 pages of this data were responsive to the warrant, of which only two messages were admitted into evidence. *Id*. In deciding whether to suppress any of the seized materials, the district court "properly considered only the Facebook messages the government planned to introduce at trial." *Id*. The court was not required to suppress other evidence not introduced at trial, even if it exceeded the scope of the warrant. *Id*.

In this case, the search of the email accounts was date-restricted—from December 1, 2004 through December 31, 2016. The parties agree that Mr. Cummings ceased receiving disability benefits in January 2014. Thus, the question before the Court is whether the Government had probable cause to search emails from February 2014 to December 2016. Whether there is probable cause depends upon whether there is a fair

probability that evidence of the alleged crimes would be found in the emails from February 2014 to December 2016. The Court finds that there is a fair probability that such evidence could exist in those emails. The fact that Mr. Cummings ceased receiving benefits in January 2014 does not mean that no evidence of prior deception or fraud could be found in communications after that date. Defendants' argument that the extension of the search period beyond January 2014 is essentially a "slippery slope" is unavailing. There may be an end date beyond which the search would be unreasonable, but the Court need not consider that possibility at this time because the end date of December 31, 2016 was reasonable in light of the circumstances of this case. The Court finds that the Microsoft Warrant is not overbroad as to time. However, to the extent that the Government seeks to introduce any seized evidence at trial that is beyond the scope of the probable cause established by the warrant affidavit, that evidence is subject to suppression. *See Andresen*, 427 U.S. at 482 n. 11; *Cardwell*, 680 F.2d at 78.

**3. Good Faith Exception**

"Evidence obtained pursuant to a facially valid search warrant later found to be invalid is admissible if the executing officers acted in good faith and in objectively reasonable reliance on the warrant." *Spilotro*, 800 F.2d at 968 (citing *United States v. Leon*, 468 U.S. 897, 922-23 (1984)). "Suppression of evidence obtained pursuant to a warrant should be ordered only…in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Leon*, 468 U.S. at 918. In most cases where a law enforcement officer has obtained a search warrant from a judge and acted within its scope, "there is no police illegality and thus nothing to deter." *Id.* at 921. However, the officer's "reliance on the magistrate's probable cause determination and on the technical sufficiency of the warrant…must be objectively reasonable." *Id.* at 922. The good faith exception to the exclusionary rule does not apply when the warrant is "so facially overbroad as to preclude reasonable reliance by the executing officers." *United States v. Michaelian*, 803 F.2d 1042, 1046 (9th Cir. 1986).

The Magistrate Judge found that the Microsoft Warrant was not "so facially

overbroad as to preclude reasonable reliance by the executing officers." *Id*.; (Doc. 136 at 11.) The Court agrees with the Magistrate Judge that "even if the Microsoft Warrant were found to be technically deficient, the probable cause statement supporting the warrant establishes at least a colorable argument for probable cause[.]" (*Id*.) There is no evidence before the Court that the executing agents did not rely on the search warrant in an objectively reasonable manner, and the Court finds that they did. Accordingly, the good faith exception would apply even if the warrant were overbroad or not sufficiently particular.

**IV. Conclusion**

The Court has reviewed Judge Jacqueline M. Rateau's Report and Recommendation, the parties' briefs, and the record. Viewing the reasonableness of the warrant in the totality of the circumstances, the Court finds that the Microsoft Warrant is sufficiently particular to withstand Fourth Amendment scrutiny. Even if the warrant were technically deficient, the Court finds that the good-faith exception to the exclusionary rule would apply.

Accordingly,

**IT IS ORDERED** that Defendants' Objection (Doc. 161) is **overruled**.

**IT IS FURTHER ORDERED** that the Report and Recommendation (Doc. 136) is **accepted and adopted**, as set forth above.

**IT IS FURTHER ORDERED** that Defendants' Joint Motion to Suppress (Doc. 102) is **denied**.

Dated this 27th day of April, 2020.

Honorable Rosemary Márquez
United States District Judge